UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| JUSTIN RASHAD HARLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-00028 |
| | ) | JUDGE CRENSHAW |
| NATHAN BOLTON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Justin Rashad Harlan, a resident of Mt. Pleasant, Tennessee, brings this *pro se, in forma pauperis* action against Nathan Bolton; Mt. Pleasant Police Department; City of Mt. Pleasant, Tennessee; Leigh Anne Pickup; Stephen Barr; Amit Choksi; Bradley Rodgers; and Maury Regional Medical Center, alleging violations of his civil rights. (Doc. No. 1). Harlan seeks damages as well as attorney fees. (*Id*. at p. 3).

**I.     Required Screening of the Complaint**

The Plaintiff is proceeding as a pauper in this action; therefore, the Court must conduct an initial review of the complaint under 28 U.S.C. § 1915(e)(2) and dismiss it or any portion of it that is frivolous or malicious, fails to state a claim for which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.    In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as construed by Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). See Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that "the dismissal standard articulated in Iqbal and Twombly governs dismissals for failure to state a claim under § 1915(e)(2)(B)(ii)]

1

because the relevant statutory language tracks the language in Rule 12(b)(6)").

"Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679; see also Twombly, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams, 631 F.3d at 383 (internal quotation marks and citation omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants."); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to

affirmatively require courts to ferret out the strongest cause of action on behalf of pro se litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

**II.     Alleged Facts**

According to the complaint, on March 25, 2016, the Plaintiff was arrested for simple possession of marijuana after a traffic stop and transported first to the Mt. Pleasant Police Department and then to the Maury County Jail. Other than marijuana in his sock, which the Plaintiff disclosed, the Plaintiff denied having any further drugs in his possession. Officer Bolton accompanied the Plaintiff to the jail and, at the request of Officer Bolton, Corrections Officer Thomas performed a strip search of the Plaintiff "to look for any further narcotics or contraband." (Doc. No. 1 at p. 4). According to the police report, Thomas "observed a white substance wrapped in plastic in the area of just in Harlan's rectal area also witnessing Justin Harlan pushing the object into his anal cavity." (Id.) The Plaintiff was placed in an observation cell and his bathroom usage was monitored for the duration of his time at the jail. (Id.)

At 6:52 am on the following day, a warrant was issued to search the Plaintiff for illegal narcotics. The Plaintiff was taken to the Maury Regional Hospital, and a visual inspection followed by a digital (finger) inspection of the Plaintiff's anus was performed by Physician's Assistant Leigh Anne Pickup. (Id.) "'[R]ound balls' were felt by Leigh Anne Pickup, PA" and she ordered electronic imaging of the Plaintiff's abdomen. (Id.) No irregularities were seen via the electronic imaging. However, Bolton then gave consent for the Plaintiff to undergo an endoscopy. Dr. Bradley Rogers administered anesthesia to the Plaintiff, who then underwent an

3

endoscopy by Dr. Amit Choski. (Id. at p. 5). The complaint alleges that no one obtained information from the Plaintiff, who cannot read and operates on a substantially lower level than a normal 26-year-old, regarding his current medications prior to the administration of anesthesia. (Id.)

During the endoscopy, Dr. Choski found internal hemorrhoids and did not find any foreign objects. (Id.) After the procedure, the Plaintiff's "coloration was completely off as if he could not breathe." (Id.) The Plaintiff was discharged from the hospital and returned to the Maury County Jail but, on the following day after his release from jail, he returned to the emergency room with a skin reaction from the anesthesia the day before. (Id.) The Plaintiff subsequently was charged for the hospital procedures, which he believes were unnecessary and unconstitutionally forced upon him. (Id.)

**III. Analysis**

    **A. Mt. Pleasant Police Department**

First, the complaint names the Mt. Pleasant Police Department as a defendant to this action. However, police departments and sheriff's departments are not proper parties to a § 1983 suit; they are not bodies politic and, as such, not "persons" within the meaning of § 1983. See, e.g., Smith v. Tenn. Dep't of Corr., No. 3:09-cv-0485, 2009 WL 1505308, at *3 (M.D. Tenn. May. 27, 2009). Therefore, the Mt. Pleasant Police Department is not a suable entity under § 1983. See Mathes v. Metro. Gov't of Nashville & Davidson Cnty., No. 3:10–cv–0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) ("[F]ederal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit.")(collecting cases)). The Plaintiff's claims against the Mt. Pleasant Police Department must be dismissed.

### B. City of Mt. Pleasant

The Plaintiff also has sued the City of Mt. Pleasant, Tennessee. However, while the City of Mt. Pleasant is a suable entity, it is responsible under § 1983 only for its "own illegal acts. [It is] not vicariously liable under § 1983 for [its] employees' actions." Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (internal citations and quotation marks omitted). Under § 1983, a municipality can only be held liable if the plaintiff demonstrates that the alleged federal violation was a direct result of the city's official policy or custom. Burgess v. Fisher, 735 F.3d 462, 478 (6th Cir.2013) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); Regets v. City of Plymouth, 568 Fed. Appx. 380, 2014 WL 2596562, at *12 (6th Cir. 2014) (quoting Slusher v. Carson, 540 F.3d 449, 456-57 (6th Cir. 2008)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. Burgess, 735 F.3d at 478.

The inadequacy of police training only serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Slusher, 540 F.3d at 457. To establish deliberate indifference, the plaintiff may show prior instances of unconstitutional conduct demonstrating that the governmental entity has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. Id.; see also Gregory v. City of Louisville, 444 F.3d 725, 752-53 (6th Cir. 2006). In the alternative, where the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be held liable only

where there is essentially a complete failure to train the police force or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result. Hays v. Jefferson Cnty., Ky., 668 F.2d 869, 874 (6th Cir.1982).

Here, the Court finds that the allegations of the complaint are sufficient to state a claim for municipal liability against the City of Mt. Pleasant under § 1983 for purposes of the required PLRA screening. The complaint alleges that Defendant Bolton, who has since been terminated from the Mt. Pleasant Police Department for his actions towards the Plaintiff, previously had been employed, terminated, and re-hired by the Mt. Pleasant Police Department. (Doc. No. 1 at p. 5). In other words, the complaint alleges that the City of Mt. Pleasant was on notice of problems with Bolton but chose to rehire him and, after his rehiring, he violated the Plaintiff's Fourth Amendment rights. It is unclear whether the Plaintiff ultimately can prevail on this claim; however, the Court finds that the claim warrants further factual development, particularly considering the invasiveness of the procedures the Plaintiff was forced to undergo by Defendant Bolton.

### C. Remaining Defendants

The Plaintiff's claims against all remaining Defendants stem from the digital (finger) exam, imaging, and endoscopy the Plaintiff was forced to undergo at the Maury County Hospital in an effort to find drugs inside his rectum. The Supreme Court has given correctional officers latitude "to devise reasonable search policies to detect and deter the possession of contraband in their facilities." Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 566 U.S. 318, 328-29, 132 S. Ct. 1510, 1517, 182 L.Ed.2d 566 (2012); see also Stoudemire v. Mich. Dep't of Corr., 705 F.3d 560, 573–74 (6th Cir. 2013) (applying the principles of Florence to an individual search, not just review of prison regulations). However, "regulation[s] impinging on an inmate's

6

constitutional rights" must be "reasonably related to legitimate penological interests." <u>Florence</u>, 566 U.S. at 328 (internal quotation marks omitted) (emphasis added). Correctional officers' discretion to conduct penological searches has limits. Courts must "take cognizance of the valid constitutional claims of prison inmates," <u>Stoudemire</u>, 705 F.3d at 571–74 (quoting <u>Turner v. Safley</u>, 482 U.S. 78, 84, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987)), and balance "the need for the particular search against the invasion of personal rights that the search entails." <u>Bell v. Wolfish</u>, 441 U.S. 520, 559, 99 S. Ct. 1861, 60 L.Ed.2d 447 (1979). That balancing requires consideration of "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." <u>Id.</u>

The Supreme Court has described a person's interest in his own bodily integrity as the "most personal and deep-rooted expectations of privacy"—the very interests the Fourth Amendment protects. <u>Winston v. Lee</u>, 470 U.S. 753, 760, 105 S. Ct. 1611, 84 L.Ed.2d 662 (1985). Of course, preventing contraband from entering a detention facility is a legitimate penological goal. <u>See Florence</u>, 132 S.Ct. at 1518–20. Those ends do not justify all means, however. The Supreme Court has found that, even when officers conducting an investigative search have reasonable suspicion or probable cause, they may not use all means to uncover evidence. In <u>Rochin v. California</u>, 342 U.S. 165, 72 S. Ct. 205, 96 L.Ed. 183 (1952), the police officers watched a suspected drug dealer swallow two morphine capsules. 342 U.S. at 166, 72 S.Ct. 205. Even though the officers knew the capsules were in Rochin's stomach and had a reasonable suspicion to believe they were morphine capsules, the officers could not request that a doctor insert a tube into the man's stomach and induce him to vomit. <u>Id.</u> at 172, 72 S.Ct. 205. Similarly, in <u>Winston v. Lee</u>, 470 U.S. 753, 105 S. Ct. 1611, 84 L.Ed.2d 662 (1985), the officers had probable cause to believe that the bullet tying an armed-robbery suspect to the crime was lodged in the suspect's left

7

collarbone, see 470 U.S. at 756, 105 S.Ct. 1611, as well as court approval to conduct a surgery to remove the bullet, id. at 757, 105 S.Ct. 1611, yet the Supreme Court still held that forced surgery was far too intrusive to justify the officers' search for evidence. Id. at 767, 105 S. Ct. 1611.

Those same principles apply when the interests involved are penological. "[A] correctional institution will have little need to conduct the search or seizure in a particular manner if there are 'obvious, easy alternatives that fully accommodate the prisoner's rights at *de minimis* cost' to the institution's valid penological interest underlying the search in the first place." Williams v. City of Cleveland, 771 F.3d 945, 954 (6th Cir. 2014)(quoting Turner, 482 U.S. at 90–91, 107 S. Ct. 2254)(internal alterations omitted).

Here, the complaint alleges that Bolton and the other officers already had employed less intrusive ways to prevent the Plaintiff from secretly bringing contraband into the facility such as monitoring the Plaintiff for signs of intoxication and waiting for him to have a bowel movement and an x-ray of the Plaintiff's rectum in order to learn whether there was something lodged in it. Yet, when these procedures did not yield results the officers sought, and even after a digital exam of the Plaintiff's rectum, the officers forced the Plaintiff to undergo an endoscopy with anesthesia.

As to the Defendant physicians and hospital, the Court finds that the complaint states a colorable claim as to whether these Defendants were acting as state agents. An officer cannot use private parties to conduct illegal searches. See, e.g., Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 614, 109 S. Ct. 1402, 103 L.Ed.2d 639 (1989)("Although the Fourth Amendment does not apply to a search and seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government."); Booker v. LaPagalia, 617 Fed. Appx. 520, 532 (July 10, 2015)("But that a doctor performed this humiliating search [for prisoner contraband allegedly

8

hidden in his rectum] in a hospital does not make this search reasonable."); see also George v. Edholm, 752 F.3d 1206,1220 (9th Cir. 2014)(holding that, on March 13, 2004, it was clearly established that the Fourth Amendment protects people from medical procedures induced by law-enforcement officers); Ellis v. City of San Diego, 176 F.3d 1183, 1191–92 (9th Cir.1999) (denying qualified immunity to nurses and doctors who administered tranquilizers, took blood tests, and inserted a catheter into the plaintiff's penis).

The Court therefore finds that the complaint states actionable Fourth Amendment claims pursuant to § 1983 as to the remaining Defendants. The complaint calls into question whether the Plaintiff's digital (finger) rectal search, the digital imaging of the Plaintiff, and the endoscopy performed on the Plaintiff under anesthesia were reasonable and necessary actions to prevent contraband from entering the Maury County Jail under the facts of this case.

**IV. Conclusion**

In conclusion, the Court finds that the complaint fails to state a claim upon which relief can be granted as to the Mt. Pleasant Police Department. That claim will be dismissed with prejudice. 28 U.S.C. § 1915(e)(2).

However, as to the Plaintiff's claims against the City of Mt. Pleasant and all other remaining Defendants, the Court finds that the complaint states actionable Fourth Amendment claims pursuant to § 1983 as to the remaining Defendants regarding whether the Plaintiff's rectal search, the digital imaging of the Plaintiff, and the endoscopy performed on the Plaintiff under anesthesia were reasonable and necessary actions to prevent contraband from entering the Maury County Jail under the facts of this case.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE